UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARIAN J. KOHLBUSCH., <br>     *Plaintiff*, <br>     *vs*. <br> MICHAEL J. ASTRUE, <br> COMMISSIONER OF SOCIAL SECURITY, <br>     *Defendant*. | ) <br> ) <br> ) <br> )      2:10-cv-00210-JMS-WGH <br> ) <br> ) <br> ) <br> ) |

## **ORDER**

Plaintiff Marian Kohlbusch applied for Disability Insurance Benefits and Supplemental Social Security Income (collectively "disability benefits") from the Social Security Administration in October 2006.[1] In December 2006, following the denial of her applications, Ms. Kohlbusch appeared at a hearing before Administrative Law Judge ("ALJ") William L. Hafer. After Ms. Kohlbusch testified, the ALJ continued the hearing so she could undergo consultative internal medicine and mental examinations. After a second hearing in June 2009, the ALJ found Ms. Kohlbusch not disabled. The Appeals Council denied review of the ALJ's decision. Ms. Kohlbusch now requests review of the ALJ's decision under 42 U.S.C. § 405(g).

**I.**
**BACKGROUND**

Ms. Kohlbusch, now 56 years old, alleges she became disabled on July 14, 2006, due to symptoms associated with diverticulitis, a mass behind her ear, diabetes, post-traumatic stress disorder ("PTSD"), and depression. [Dkt. 14-2 at 58.] Prior to 2006, Ms. Kohlbusch worked as a box assembler, a cashier, and a cook. [*Id.*]

---

[1] The disability standards for the two programs are the same, as is relevant to this action. *See* 20 C.F.R. § 404.1501 *et seq.*, *see also* 20 C.F.R. § 416.901 *et seq.*

1

**A) Medical Evidence**

Ms. Kohlbusch's medical records indicate a possible history of stroke, hypertension, and adult onset diabetes,[2] as well as a history of kidney stones and diverticulitis (swelling of a pouch in the intestine wall), a mood disorder, and an anxiety disorder. [Dkt. 14-2 at 18-21.]

In June 2007, Ms. Kohlbusch's treating physician, Dr. Baumstark, completed a Multiple Impairment Questionnaire, based on 12 evaluations conducted over the prior three months for exacerbations of her diverticulitis, acute abdominal pain, and anxious mood despite treatment. [Dkt. 14-7 at 119-126.] Dr. Baumstark diagnosed chronic depression, anxiety and panic disorder, post-stroke fatigue and poor concentration, recurrent diverticulitis, chest pain and difficulty breathing, hypertension, diabetes, and chronic foot pain—noting that her pain was variable, from mild to severe. [*Id.* at 119-120.] She cited to lab studies of blood glucose readings and a CT scan of the abdomen in support of her diagnosis. [*Id.*]

Dr. Baumstark further reported that Ms. Kohlbusch's prognosis was poor due to "likely irreversible" conditions. [*Id.*] She opined that Ms. Kohlbusch was only able to sit for one hour a day due to poor concentration, and that Ms. Kohlbusch could only stand/walk a total of one hour a day due to pain in her foot. [*Id.* at 121.] Dr. Baumstark also opined that Ms. Kohlbusch could lift no more than five pounds occasionally, due to chest pain, [*id.* at 122], and that she had significant limitations performing repetitive reaching, handling, fingering, and lifting due to arthritis in her hands and wrists, and left-sided shoulder pain and immobility since her stroke. [*Id.*] Dr. Baumstark further opined that Ms. Kohlbusch's depression and anxiety rendered her incapable of experiencing even low work-stress. [*Id.* at 124.] Her treatment recommendations were limited to physical therapy for her foot injury. [*Id.* at 123.]

---

[2] Although Ms. Kohlbusch's records indicate a history of these conditions, there is no evidence of any episode of treatment for such conditions during the period in question.

The next month, Dr. Baumstark diagnosed Ms. Kohlbusch with osteoarthritis in the hands, wrists, and shoulders, diverticulitis with severe pain flairs every other month, chronic depression, anxiety and panic disorder, post-stroke fatigue with poor concentration, and chest pains with shortness of breath. [*Id.* at 128; *see also* dkt. 14-8 at 4.] Dr. Baumstark opined that Ms. Kohlbusch was disabled as a result of these conditions. [*Id.*]

In February, 2009, Dr. Albert Fink conducted a consultative mental examination of Ms. Kohlbusch. The examination revealed poor appetite and poor sleep, as well as a GAF score of 62 (indicating some mild symptoms). Dr. Fink opined that Ms. Kohlbusch was mildly limited in her ability to understand, remember, and carry out complex instructions; to make judgments on complex work decisions; to interact with the public; and to respond appropriately to usual work situations and to changes in a routine work setting. [*Id.* at 22-23.]

Also that month, Dr. Shuyan Wang conducted a consultative examination. [*Id.* at 26.] Dr. Wang diagnosed diverticulitis, left neck and arm pain, bilateral hip and knee pain, diabetes, hypertension, chest pain, history of stroke, possible left carpal tunnel syndrome, mild obesity, depression, anxiety, hypothyroidism, and a history of right foot ligament injury. [*Id.* at 32.]

Dr. Wang opined that in an 8-hour workday, Ms. Kohlbusch was able to sit for a total of seven hours, stand a total of four hours, and walk a total of two hours, and that she should be restricted to sit for two hours at one time, stand for one hour at a time, and walk for 20 minutes at a time [*Id.* at 35.] Dr. Wang noted that his opinion was based on findings of hip pain, knee pain, instability, and slow movement. [*Id.*]

**A) Ms. Kohlbusch's Testimony**

At the December 2006 hearing, Ms. Kohlbusch testified that she had a stroke for which she was hospitalized in 2003. [Dkt. 14-2 at 61.] She had been working as a cashier at the time.

3

[*Id.*] Following the alleged stroke, she went back to work as a cashier but claimed that she had poor memory and trouble counting change. [*Id.* at 61-62.] Ms. Kohlbusch further testified that she injured her foot at work in 2006, which made it hard to stand. [*Id.*] She also said that she sometimes had fairly severe pain in the lower left quadrant of her stomach, and that when the pain was bad, she went to the emergency room, though she had not been to the emergency room for that condition since she moved to Indiana in 2008. [*Id.* at 70.] She had, however, been to the ER twice because of high blood sugar and heart palpitations. [*Id*. at 70-71.]

Additionally, Ms. Kohlbusch reported having trouble gripping objects but said she could probably pick up small objects with her right hand. [*Id.* at 62-63.] She estimated that she could stand no more than fifteen minutes at a time for a total of two hours a day and that she could walk about one block. [*Id.* at 75.] She also said she occasionally used a cane. [*Id.* at 79-80.]

Ms. Kohlbusch further testified that she suffered from depression—she claimed she cried every day and slept only two or three hours per night, along with occasional naps that lasted twenty minutes to an hour. [*Id.* at 67-69.] Additionally, Ms. Kohlbusch testified that she experienced anxiety and panic attacks. [*Id.* at 71-72.] She also reported that she had had high blood pressure, which was not responding well to medication. [*Id.* at 73.]

At the June 2009 hearing, Ms. Kohlbusch testified that she had no strength in her legs and used a cane occasionally to help her walk. [*Id.* at 31.] She also said she had weakness and pain in her left hand and arm. [*Id.* at 32.] Ms. Kohlbusch further testified that she was taking medication for anxiety and panic attacks, of which only Xanax caused side effects. [*Id.* at 37-39, 44.] Ms. Kohlbusch acknowledged that she played games, cooked, cleaned, and drove a car. [*Id* at 37, 77.]

**B) Vocational Expert's Testimony**

At the second hearing, the ALJ asked the vocational expert to consider a hypothetical individual the same age as Ms. Kohlbusch with the same education and work experience. [*Id.* at 47.] The hypothetical person could frequently lift and/or carry 10 pounds and occasionally lift and/or carry 20 pounds. The individual could sit for six hours in an eight-hour period, stand for thirty minutes at one time, for four hours out of eight, and walk only intermittently for two hours out of an eight-hour period. She was further limited to unskilled work involving the ability to understand, remember and carry out one or two-step instructions. She could reach overhead occasionally and frequently grip and grasp with her left, non-dominant, hand. [*Id.*]

Based on this question, the vocational expert testified that the individual could perform Ms. Kohlbusch's past job as a cashier. [*Id.*] However, the vocational expert also testified that if that individual were further limited by the need to change position from standing or walking to sitting every fifteen minutes, she would be unable to perform any work. [*Id.* at 48.]

## II.
### STANDARD OF REVIEW

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the

matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

When evaluating a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can she perform her past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). To properly perform the analysis at Steps Four and Five, the ALJ must first find the disability claimant's RFC, or "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

### III.
### THE ALJ'S OPINION

At Step One of his analysis, the ALJ found that Ms. Kohlbusch had not engaged in substantial gainful activity since the onset date of her alleged disability. [*Id.* at 15.] At Step Two, the ALJ found that Ms. Kohlbusch had severe impairments, but that she had no impairment or combination of impairments that medically equaled any of listed impairments at Step Three. [*Id.* at 15-17.] The ALJ also found that Ms. Kohlbusch's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not credible. [*Id.* at 18.] Based on her impairments, the ALJ found that Ms. Kohlbusch had the residual functional capacity ("RFC") to perform light work,[3] with the following relevant limitations: she could sit, stand, and walk for six hours per eight hour period; and she could occasionally stoop, kneel, crouch, crawl, and

---

[3] "Residual functional capacity" denotes what an individual can still do, despite his or her limitations. 20 C.F.R. § 404.1545(a). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). It may require a good deal of walking or standing or involve sitting most of the time with some pushing and pulling of arm or leg controls. *Id*.

6

climb stairs. [*Id.* at 17.] Given this RFC, the ALJ determined that Ms. Kohlbusch was able to perform her past work as a cashier and was therefore not disabled. [*Id.* at 20-21]; *see also* 20 C.F.R. §404.1520(a)(4)(iv).

## IV.
### DISCUSSION

Ms. Kohlbusch alleges the ALJ committed reversible error in making his RFC finding and, consequently, in his subsequent findings at Steps Four and Five. Specifically, she argues that the ALJ erred by failing to defer to the medical opinions of Dr. Baumstark and Dr. Wang, and by misevaluating her credibility. Additionally, Ms. Kohlbusch argues that the case should be remanded because the Appeals Council improperly denied review.

### A) The ALJ's Consideration of Medical Source Opinions

#### 1. Dr. Baumstark's Opinion

Ms. Kohlbusch first contends that the ALJ's failure to give Dr. Baumstark's medical opinion "controlling weight," and "fail[ed] to provide good reasons for rejecting the opinion requires remand." [Dkt. 16 at 14, 12.] By discrediting the treating physician, Ms. Kohlbusch argues, the ALJ acted contrary to the law and defied "common logic." [Dkt. 16 at 11.]

The ALJ gave no weight to Dr. Baumstark's opinion that Ms. Kohlbusch is limited to a total of less than two hours of sitting, standing, and walking during an eight-hour workday, [dkt. 14-2 at 19], or to her opinion that she could sit for less than one hour because of poor concentration. [Dkt. 14-2 at 21; *see also* dkt. 14-7 at 121.]

The opinion of a treating physician is given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic testing and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) and §416.927(d)(2); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). But an ALJ need not defer to unsupported

7

opinions.  *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).  If the ALJ concludes that the treating physician's opinion is inconsistent with other evidence, he must simply articulate and explain the inconsistency.  *Clifford v. Apfel*, 227 F.3d 863, 870-871 (7th Cir. 2000); *see also Giles v. Astrue,* 483 F.3d 483, 488 (7th Cir. 2007).

Here, the ALJ considered the limitations set forth by Dr. Baumstark and, only after lengthy explanation, disregarded them because they were inconsistent with the rest of the record. [Dkt. 14-2 at 19-21.]  After articulating Dr. Baumstark's findings, the ALJ noted that the doctor's opinion was unsupported by medically acceptable and laboratory diagnostic techniques, and that it was contradicted by her own examination findings.  [Dkt. 14-2 at 19, 21.] Specifically, the ALJ explained, Dr. Baumstark noted an absence of neurological deficits in her report; moreover, her report did not mention muscle weakness or decreased sensation.  [*Id.* at 20.]  The ALJ also explained that Dr. Baumstark's opinion was contradicted by Dr. Wang, who reported an absence of muscle atrophy.  [*Id.* at 19-20; *see also* dkt. 14-8 at 30-31.]  Finally, the ALJ explained, Dr. Baumstark's sit/stand limitations, which the ALJ noted would leave Ms. Kohlbusch bed-ridden three-fourths of the day, were contradicted by Ms. Kohlbusch's own testimony regarding her daily activities.  [Dkt. 14-2 at 16, 77-79.]

The ALJ articulated and explained sound reasons for rejecting Dr. Baumstark's opinion. Indeed, a review of the record shows that Ms. Kohlbusch made no attempt to demonstrate how even very poor concentration, which is not established by any medical evidence, would result in such a severe limitation her person's ability to sit.  The Seventh Circuit has acknowledged that when a doctor sets forth unexplained and extreme limitations, the doctor might be unreliable. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("The treating physician's opinion .

. . may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'").

Because the limitations Dr. Baumstark articulated are unsupported and inconsistent with the record, and because the ALJ explained these inconsistencies, the Court finds that the ALJ did not commit reversible error by rejecting Dr. Baumstark's opinion.

### 2. Dr. Wang's Medical Opinion

Ms. Kohlbusch also contends that the ALJ should have given greater weight to the opinion of Dr. Wang, the consultative examiner, regarding her standing and manipulative limitations. [Dkt. 16 at 13.] Specifically, she argues that the ALJ should not have rejected Dr. Wang's opinion simply because the doctor felt Ms. Kohlbusch put forth "questionable" effort in testing for those two areas. [*Id.*]

Although the ALJ did not ultimately accept Dr. Wang's opinion regarding Ms. Kohlbusch's standing and manipulation ability, Ms. Kohlbusch does not dispute that his decision was predicated upon vocational expert testimony given in response to a hypothetical question that did, in fact, incorporate the limitations set forth by Dr. Wang. [Dkt. 14-2 at 19-20, 47; dkt. 14-8 at 35-36.] In other words, the ALJ's RFC determination was predicated upon vocational expert testimony that corresponded with the limitations Ms. Kohlbusch insists she has. Any possible error therefore had no bearing on the ALJ's RFC determination and was therefore harmless. *Sanchez ex rel. Sanchez v. Barnhart*, 467 F.3d 1081, 1082–83 (7th Cir. 2006) ("[E]rrors, if harmless, do not require (or indeed permit) the reviewing court to upset the agency's decision.") Therefore, the Court finds that the ALJ did not commit reversible error by rejecting the medical opinion of Dr. Wang.

### B) Credibility Assessment

Ms. Kohlbusch also contends that the ALJ erred in determining that her testimony regarding her pain was not credible. [Dkt. 16 at 14-17.]

The ALJ's credibility determination is entitled to special deference. *Scheck*, 357 F.3d at 703; *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 992-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). Therefore, this Court will not disturb a credibility finding "unless it is 'patently wrong in view of the cold record.'" *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong.").

Ms. Kohlbusch argues that the ALJ erred by failing to credit certain portions of Ms. Kohlbusch's testimony, as well as certain portions of the RFC report written by her sister. [*See* 14-6 at 61. 63-64, 68.] In her brief, however, Mr. Kohlbusch does little more than recite her earlier testimony and fails to develop any cogent argument as to why her testimony or her sister's evaluation of her daily activities should be given more weight. That failure constitutes waiver of the claims. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.") Even if her claim was not waived, however, it would fail for the reasons outlined below.

In evaluating a plaintiff's credibility, the ALJ must first determine whether the symptoms alleged are supported by objective medical evidence that could reasonably produce such symptoms. 20 C.F.R. § 404.1529(c)(3). Second, the ALJ must evaluate the credibility of the claimant's subjective statements as to the intensity, persistence, and functionally limiting effects of the symptoms—considering such factors as daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; medications taken; and treatment. 20 C.F.R. § 404.1529(c)(3).

The ALJ in the instant case found that Ms. Kohlbusch's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC found.[4] [Dkt. 14-2 at 18.] In making this determination, the ALJ considered the limited objective evidence in the record to support Ms. Kohlbusch's claim of disability, including an absence of objective evidence documenting that she had a stroke. [*Id.*] The ALJ also noted that Ms. Kohlbusch exhibited "questionable" effort during Dr. Wang's examination. [*Id.* at 20.] He likewise observed that, contrary to Ms. Kohlbusch's claims, Dr. Baumstark never mentioned any neurological or musculoskeletal abnormalities in her objective findings. [*Id.*]

The ALJ also pointed out that Ms. Kohlbusch had minimal medical treatment, took no pain medications other than Tylenol, and was "consistently non-compliant with treatment for hypertension and diabetes." [*Id.* at 21.] He also noted that although Ms. Kohlbusch claimed to be unable to tolerate pain medications, there was no evidence that she had tried alternatives, and,

---

[4] The Court is mindful, as the ALJ should be, that the Seventh Circuit is critical of employing this type of "boilerplate language" in rendering credibility determinations. *See McClesky v. Astrue*, 606 F.3d 351, 352 (7th Cir. 2010).

while she said that she could not afford medications, she continued to smoke, which cost more than her prescribed hypertension medication. [*Id.*]

Ms. Kohlbusch has presented no evidence that suggests that the ALJ's assessment of Ms. Kohlbusch's testimony or her sister's report was "patently wrong."

Additionally, Ms. Kohlbusch argues that her credibility is bolstered by a CT scan report dated August 2007, documenting a "likely old infarct" (piece of dead tissue). [Dkt. 16 at 15-16; *see also* dkt. 14-8 at 78.] Ms. Kohlbusch concedes that this report was not before the ALJ; however, she submitted it to the Appeals Council and argues that the Court should consider it along with the other evidence in the record.

The parties agree that this Court may only consider additional evidence to determine whether it provides grounds for a remand under sentence six of 42 U.S.C. §405(g). *See Damato v. Sullivan*, 945 F.2d 982 (7th Cir. 1991). Under sentence six, new evidence would only be grounds for remand if Ms. Kohlbusch shows that the additional evidence was new, material, and not previously submitted for good cause. *See* 42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). *See* 42 U.S.C. § 405(g); *see also Wolfe v. Shalala*, 997 F.2d 321, 322 n.3 (7th Cir. 1993).

The CT scan at issue here does not qualify as new, *see Perkins*, 107 F.3d at 1296 ("new means evidence not in existence or available to the claimant at the time of the administrative proceeding"), and Ms. Kohlbusch attempts no showing of good cause for failing to submit it to the ALJ. Assuming without deciding that the evidence is part of the record, however, the CT scan still does not undermine the ALJ's credibility assessment. The existence of a "likely old infarct" does not affirm Ms. Kohlbusch's allegation that she had a stroke in 2003. With or without the CT scan, Ms. Kohlbusch has produced no evidence of the stroke itself or of any

documentation from the alleged hospitalization with which it corresponded. [*See* dkt. 14-2 at 61.] Furthermore, this evidence has no bearing on the numerous other factors, which—taken together—led the ALJ to discredit the limiting effects of Ms. Kohlbusch's symptoms.

Other than the properly rejected opinion of Dr. Baumstark, nothing in the record suggests that the ALJ's credibility assessment was in patently wrong. The Court there finds that the ALJ did not err in determining that Ms. Kohlbusch's pain reports were not credible where they were contradicted by her RFC.

**C) Past Relevant Work**

Ms. Kohlbusch also argues that the ALJ erred in determining that she could engage in her past work as a cashier. [Dkt. 16 at 18.] The Step-Four finding, she argues, is flawed because the cashier job, as described in the Dictionary of Occupational Titles ("DOT"), is inconsistent with the vocational expert's testimony that the ALJ relied upon. Specifically, Ms. Kohlbusch argues, the DOT describes the cashier job as a light exertional job that requires frequent reaching, handling and fingering, and "there is not a single medical source that found Ms. Kohlbusch could perform such activities." [Dkt. 16 at 17-18.]

Generally, the ALJ must inquire as to whether the vocational expert's testimony is consistent with the DOT and reconcile any apparent discrepancies; nevertheless, unless a conflict is "apparent," an ALJ may rely upon the vocational expert's testimony concerning the relevant work. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). To constitute reversible error, any conflicts between the testimony and the DOT must have been "obvious enough that the ALJ should have picked up on them without any assistance." *Id*.

Here, Ms. Kohlbusch does not argue that any discrepancy was apparent at the hearing. In fact, at the hearing itself, after the vocational expert testified that Ms. Kohlbusch could be a

13

cashier, the ALJ asked him whether there was any conflict between his testimony and the data in the DOT—the expert testified that there was not. [Dkt. 14-2 at 48.] Ms. Kohlbusch's attorney then declined the opportunity to ask the vocational expert any follow-up questions. [*Id.*]

When a claimant is represented by counsel, as Ms. Kohlbusch is here, she "is presumed to have made [her] best case before the ALJ." *See Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Since Ms. Kohlbusch did not raise any concern about inconsistencies between the vocational expert and the DOT at the hearing, and since she does not now argue that the inconsistency was apparent at the hearing, the Court finds that the ALJ's reliance on the vocational expert's testimony was proper.

### D) Review by the Appeals Council

Finally, Ms. Kohlbusch argues in a single sentence that this case should be remanded because the Appeals Council, upon denying review of the ALJ's decision, "failed to indicate why the contrary evidence provided no basis for changing the ALJ's decision." [Dkt. 16 at 15.] Although the Commissioner responds defensively to a potential argument that the Appeals Council's refusal to change the ALJ's decision is reversible error, Ms. Kohlbusch does not actually develop this argument enough to warrant such a response. Again, the Seventh Circuit has held that articulating an argument in no more than a single statement amounts to waiver of that argument. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384 (7th Cir. 2008) (failure to cite elements of a claim or to show how any evidence in the record supports such a claim results in waiver of the argument).

Even if Ms. Kohlbusch did develop this argument, however, the Appeals Council's denial of a request for review is only subject to judicial review if the Appeals Council refused to consider the evidence at all. *Perkins*, 107 F.3d at 1294. In this case, the Appeals Council stated

explicitly that it had "considered . . . the additional evidence" but found that it did not "provide a basis for changing the Administrative Law Judge's decision." [Dkt. 14-2 at 2-3.] Therefore, even if properly raised Ms. Kohlbusch's argument would fail.

Ms. Kohlbusch ultimately points to no reversible error in the ALJ's reasoning; the Court finds substantial evidence exists to support his determination that Ms. Kohlbusch is not disabled.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent….Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 2010 U.S. App. LEXIS 2604, *5 (7th Cir. 2010) (per curiam). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Ms. Kohlbusch does not qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

05/06/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Jeannine LaPlace
LAW OFFICES OF HARRY J. BINDER & CHARLES E. BINDER, P.C.
fedcourt@binderandbinder.com